# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SONIA ORTEGA,
  *Plaintiff*,

v.                                    No. 3:21-cv-485 (JAM)

COURTNEY E. MORAN,
  *Defendant*.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff claims that the defendant—a state judicial marshal—used excessive force against her at a state courthouse. The defendant moves for summary judgment. I will deny the motion because there remains a genuine issue of fact whether the defendant used excessive force and whether the defendant is entitled to qualified immunity.

### BACKGROUND

The plaintiff is Sonia Ortega. The defendant is Lt. Courtney Moran, a former state judicial marshal who used to work at the state criminal courthouse in Bridgeport, Connecticut.[1] According to the complaint, Lt. Moran used excessive force against Ortega in violation of the Fourth and Fourteenth Amendments.[2]

Lt. Moran has moved for summary judgment.[3] Except as otherwise noted, the following facts are undisputed for purposes of the summary judgment record.[4]

---

[1] At the oral argument of this motion I learned that Moran retired at the rank of lieutenant and therefore I refer to her in this ruling as Lieutenant Moran.

[2] Doc. #1. Ortega's counsel at oral argument confirmed that she seeks to proceed only under the Fourth Amendment as applicable to the States through the Fourteenth Amendment and does not make any additional general due process claim. Nor does the complaint allege any claim of false arrest as distinct from a claim of excessive force.

[3] Doc. #19.

[4] When a defendant files a properly supported motion for summary judgment, a plaintiff may not rest on the factual allegations of an unverified complaint as to matters that have been controverted by a defendant's evidentiary showing. Instead, the plaintiff must come forward with evidence to support the plaintiff's claims to the extent called into question by the defendant's evidentiary submission. *See* Fed. R. Civ. P. 56(c), (e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). This Court's local rules govern the manner in which the parties must adduce

Ortega was at the Bridgeport courthouse on August 16, 2018, to attend the trial of her son.[5] At the outset of opening court, the presiding judge stated that while the courtroom would be open to the public, he would not allow talking and, if necessary, would have judicial marshals remove any offending person from the courtroom.[6] The judge later stopped the hearing and requested that the judicial marshals remove three women—including Ortega—from the courtroom.[7]

The three women were escorted from the courtroom to the courthouse lobby.[8] While being escorted to the first floor exit, two of the three women—but *not* Ortega—were verbally abusive to the judicial marshals.[9] One of the three women—but *not* Ortega—took out her phone and put it near Lt. Moran's face.[10] Lt. Moran put her hand up and informed the woman that picture taking was not allowed.[11]

Here the parties' accounts diverge. According to Lt. Moran, Ortega then "pushed" Lt. Moran and also "scratched [her] under the left eye."[12] Lt. Moran further claims that, because of Ortega's actions, she was to be taken into custody but that she resisted the efforts of Lt. Moran

---

evidence that may properly be considered for purposes of a summary judgment record. *See* D. Conn. L. Civ. R. 56(a). My recitation of the facts does not include or credit facts for which there is not proper evidentiary support.

[5] Doc. #19-2 at 1 (¶ 4); Doc. #23-1 at 1 (¶ 4); Doc. #23-2 at 1 (¶ 2).

[6] Doc. #19-2 at 1 (¶ 5); Doc. #23-1 at 1 (¶ 5).

[7] *Id.* at 1-2 (¶¶ 6-8); Doc. #23-1 at 1 (¶¶ 6-8).

[8] *Id.* at 2 (¶ 9); Doc. #23-1 at 1 (¶ 9).

[9] Lt. Moran asserts that all three women were "verbally abusive to Judicial Marshals" while they were being escorted to the first floor, Doc. #19-2 at 2 (¶ 10), but Ortega disputes this assertion, Doc. #23-1 at 1 (¶ 10), and she attests that "I was not abusive to the defendant or to any other marshals." Doc. #23-2 at 2 (¶ 5). Because Ortega disputes only that she was not abusive, I accept as true that the other two women were verbally abusive.

[10] Doc. #19-2 at 2 (¶ 12); Doc. #23-1 at 2 (¶ 12). Lt. Moran's affidavit states that it was "one woman" who took her phone out and placed it near her face, Doc. #19-4 at 2 (¶ 11), without suggesting that it was Ortega. Ortega's affidavit states that she "did not attempt to take photographs" of Lt. Moran or anyone else at the courthouse. Doc. #23-2 at 2 (¶ 6). When I raised the issue of identity at oral argument, counsel for Lt. Moran did not suggest that it was Ortega who put her phone near Lt. Moran's face, and I cannot draw that conclusion consistent with my duty to interpret the factual record in the light most favorable to Ortega.

[11] 11 Doc. #19-2 at 2 (¶ 13); Doc. #23-1 at 2 (¶ 13).

[12] Doc. # 19-2 at 2 (¶ 14-15); *see also* Doc. #19-7 at 8 (Judicial Marshal Services Incident Report signed by Lt. Moran stating: "Mrs. Ortega pushed me with two hands and while doing so, scratched the left side of my face under my eye").

and Marshal Michael Johnson to place her into handcuffs.[13] Lt. Moran recounts that Ortega was placed up against the wall in order for Lt. Moran and Marshal Johnson to control her arms and to place her into handcuffs which were properly sized and double locked.[14]

By contrast, Ortega attests that while she was in the courthouse lobby Lt. Moran "jumped me from behind and dragged me to the elevator, where she handcuffed me very tightly and painfully, and forcibly took me down to the lockup area of the courthouse."[15] She claims that "[a]s a result of the attack I sustained a bump on my head and bruises on my arms, which caused me pain."[16] Ortega further states that she was "not abusive" to Lt. Moran or any other judicial marshal and that she did not "push" or "scratch" Lt. Moran.[17]

The police were called, and Ortega was arrested and charged with assault on public safety personnel and breach of peace.[18] Neither Lt. Moran nor Marshal Johnson saw any cuts, abrasions, or bruising on Ortega, and Ortega did not tell them that she was injured in any way.[19] To the extent that both parties in their fact statements otherwise make allegations that are conclusory or amount to legal conclusions, I do not credit them.[20]

---

[13] Doc. #19-2 at 2-3 (¶¶ 17-19).

[14] *Id.* at 3 (¶¶ 20-22).

[15] Doc. #23-2 at 1 (¶ 3).

[16] *Ibid.* (¶ 4).

[17] *Id.* at 2 (¶¶ 5, 7-8). A police report submitted by Lt. Moran states that, when the police interviewed her at the courthouse, "Ortega stated that when her daughter held up her phone, that she attempted to stop her daughter *and accidentally hit Lt. Moran.*" Doc. #19-7 at 3 (emphasis added). But Lt. Moran's own statement of facts claims that Ortega "pushed" her, and in view of Ortega's affidavit claim that she did not "push" Lt. Moran and my duty to view the facts in the light most favorable to Ortega at this stage of the litigation, I cannot conclude at this juncture that Ortega accidentally hit Lt. Moran. Of course, if this statement from the police report is adduced and credited at trial, it could be highly significant to whether Lt. Moran violated the Fourth Amendment and/or is entitled to qualified immunity.

[18] Doc. #19-2 at 3 (¶¶ 23-26). Ortega's counter-statement of facts prepared by her counsel partially admits these facts but then claims without evidentiary support that Ortega was held for hours before being taken to the state police barracks. Doc. #23-1 at 2 (¶¶ 23-26). The record does not reflect any disposition of the charges that were brought against Ortega.

[19] Doc. #19-2 at 3-4 (¶¶ 28, 30-32). Ortega's counter-statement of facts claims that her injuries were "obvious" but does not support this claim with any evidentiary support. Doc. #23-1 at 2-3 (¶¶ 27, 30).

[20] *See, e.g.,* Doc. #19-2 at 3 (¶ 29) (Lt. Moran's claim that she "only used a reasonable and sufficient amount of force to take the plaintiff into custody"); Doc. #23-1 at 2 (¶ 27) (Ortega's claim that her "distress and pain" were

## DISCUSSION

The principles governing the review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).[21]

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST., amend. IV. Because the Fourth Amendment protects against unreasonable seizures, it has long been recognized that a law enforcement officer violates the Fourth Amendment by using excessive force against a free person for the purpose of arresting or restraining his or her freedom of movement. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 388 (1989). Whether an officer's use of force is "excessive" must be judged by "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. A court must give "careful attention to the facts and circumstances of each particular case," including (1) "the severity of the crime at issue," (2)

---

"intended" by Lt. Moran). Of course, to the extent that the facts alleged may support these claims, I give those facts independent consideration.

[21] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

"whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *see also Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (same).

Viewing the facts as I must in the light most favorable to Ortega, the record shows that Lt. Moran "jumped" Ortega from behind and then "dragged" her to the elevator where she was tightly handcuffed and then taken to the courthouse lock-up. Ortega attests that she was not abusive and that she did not push or scratch Lt. Moran. These facts suggest that Lt. Moran intentionally attacked Ortega without provocation or any legitimate law enforcement reason. In the absence of any provocation or other reason for the use of force against Ortega, a reasonable jury could conclude that Lt. Moran's use of force was objectively unreasonable and therefore excessive in violation of the Fourth Amendment.

Of course, Lt. Moran hotly disputes Ortega's account. But she does not identify any grounds for me to endorse her own account over that of Ortega at this stage of this litigation.

Does it matter that Ortega's account is self-serving? No, it does not. As the Second Circuit has concluded, "[t]o hold ... that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an

inappropriate stage—into an adjudication of the merits," and "[s]uch a radical change in the courts' role would be inappropriate not just in the discrimination context, but everywhere." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Indeed, as Judge Easterbrook has observed, "[m]ost affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Wilson v. McRae's Inc.*, 413 F.3d 692, 694 (7th Cir. 2005); *see also St. Pierre v. Dyer*, 208 F.3d 394, 405 (2d Cir. 2000) (noting that "the self-serving nature of a witness's statements goes not to their admissibility but to their weight," and that "[t]he weighing of [plaintiff's] evidence is a matter for the finder of fact at trial; it [i]s not the prerogative of the court on a motion for summary judgment").

Does it matter that Ortega's account is contradicted as Lt. Moran claims by other evidence? No, it does not. As the D.C. Circuit has explained, "the summary judgment standard requires us to credit the plaintiff's version of events, even if 'directly contradictory' to other testimony." *Robinson v. Pezzat*, 818 F.3d 1, 8 (D.C. Cir. 2016) (quoting *Tolan*, 572 U.S. at 658).

Does it matter that Ortega's account is not corroborated as Lt. Moran claims by other evidence? No, it does not. "Corroboration goes to credibility, a question for the jury, not the district court." *Id.* at 9.[22]

In short, a court has very little latitude at summary judgment to discount the non-moving party's properly factually supported version of the events. "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the

---

[22] Lt. Moran points to the fact that Ortega did not complain at the time about her injuries from the use of force. But even assuming that Ortega suffered no physical injury at all, this would not exonerate Lt. Moran from a claim for the use of excessive force. *See Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021) ("[W]e have never held that a court may grant summary judgment to officers on an excessive force claim merely because the injuries were minor even where the force was unreasonable."). The fact that Ortega did not complain of her injuries at the time does not conclusively refute her claim that Lt. Moran used excessive force.

record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019).

This is not one of those rare cases where a court may properly decline to rely on a non-moving plaintiff's account. For example, it is not a case where the non-moving party seeks to defeat summary judgment by producing a "sham" affidavit that contradicts his or her own prior sworn testimony and pleadings. *See Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104-06 (2d Cir. 2011). Nor is this a case where video evidence conclusively refutes a plaintiff's version of the facts. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (no genuine issue of fact for trial where video of police chase "blatantly contradicted" plaintiff's self-serving testimony).

Otherwise, as the Second Circuit has recently ruled, a court may not engage in "judicial evidence weighing" at the expense of its duty to credit the non-moving party's version of the facts. *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 149 (2d Cir. 2021). All in all, the facts as viewed in the light most favorable to Ortega establish at least a genuine fact issue for trial concerning whether Lt. Moran used excessive force in violation of the Fourth Amendment.

Lt. Moran further asserts a defense of qualified immunity. The doctrine of qualified immunity protects a government officer from liability for money damages stemming from a violation of the Constitution if the officer engaged in conduct that an objectively reasonable officer would not necessarily have known at the time amounted to a violation of the plaintiff's constitutional rights. *See Horn v. Stephenson*, 11 F.4th 163, 168–69 (2d Cir. 2021). In order for a plaintiff to overcome a defense of qualified immunity, a plaintiff must show that the defendant violated a right of the plaintiff that was clearly established law at the time of the conduct in question. *See ibid.*

Because it is sometimes difficult for an officer to understand how legal doctrine may apply to particular facts, a court must identify the right at issue with an appropriate level of specificity that is particularized to the facts of the case. *See id.* at 169. This is not to say that there must be a prior case involving identical facts or that is directly on point, so long as existing precedent makes clear beyond reasonable debate that what the officer was doing was a violation of the plaintiff's then-recognized constitutional rights. *See ibid.*; *see also McKinney v. City of Middletown*, 49 F.4th 730, 738-39 (2d Cir. 2022) (similar recitation of the principles of qualified immunity).

Here, I have little difficulty concluding that—if Ortega's account is credited—Lt. Moran violated the clearly established rights of Ortega and that any objectively reasonable officer would have understood that she was violating Ortega's constitutional right to be free from the use of excessive force. At the time of Ortega's arrest in 2018, it was "clearly established by [Second] Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting." *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020); *see also Jones v. Treubig*, 963 F. 3d 214, 225 (2d Cir. 2020) ("Before ... April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others.").

If it violates clearly established law to use force against an arrestee who is no longer resisting, it follows *a fortiori* that it violated clearly established law to use the quantum of force as alleged here against a *non*-arrestee who has done nothing to provoke an arrest and in the absence of any other law enforcement reason to use force. As the Second Circuit has observed, "the police may violate clearly established law by *initiating* significant force against a suspect

who is only passively resisting." *McKinney*, 49 F.4th at 742; *see also O'Hara v. City of New York*, 570 F. App'x 21, 24 (2d Cir. 2014) (rejecting qualified immunity claim because "no reasonable officer confronting the circumstances of this case, viewed most favorably to [the plaintiff], could have thought that the law authorized him repeatedly to punch an unarmed, non-menacing 17-year old in effecting an arrest").

To be sure, it might be objectively reasonable for an officer to use force against a person to restore order during crowded riot conditions even if the person themself has not done anything to provoke the use of force. But that is not Lt. Moran's claim here. Instead, Lt. Moran claims she used force because Ortega pushed and scratched her.

Lt. Moran does not claim she arrested Ortega because it was necessary to restore public order amidst general tumult created by the actions of others. Her counsel conceded at oral argument that the use of force against Ortega was not justified by the fact that someone else held a cellphone near Lt. Moran's face. Similarly, there has been no argument that Lt. Moran's use of force against Ortega was justified by the fact that two other women who were removed from the courtroom made abusive comments. Nor has there been any argument that the judge's order that Ortega be removed from the courtroom justified Lt. Moran's use of force against Ortega in the lobby of the courthouse.

When the facts are viewed in the light most favorable to Ortega, it is clear that no objectively reasonable law enforcement officer would have believed that it would be lawful for Lt. Moran without provocation to jump Ortega from behind and to handcuff and drag her to the elevator as Ortega claims.[23] Accordingly, I will deny Lt. Moran's claim to qualified immunity without prejudice to renewal of this defense on a fuller factual record at trial.

---

[23] In light of Second Circuit law as of 2018 and the absence of evidence to show that Ortega verbally complained at the time that the handcuffs were too tight, Ortega conceded at oral argument that qualified immunity bars any

CONCLUSION

The Court DENIES the defendant's motion for summary judgment (Doc. #19).

It is so ordered.

Dated at New Haven this 21st day of November 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

standalone excessive force claim based on the tightness of the handcuffs. *See Cugini v. City of New York*, 941 F.3d 604, 616-17 (2d Cir. 2019) (granting qualified immunity for excessive-use-of-force handcuffing claim where there was a lack of evidence to show the plaintiff made an explicit verbal complaint).